**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Michael Hunt, et al., | : | Case No. 3:10 CV 2896 |
| Plaintiffs, | : | Magistrate Judge Vernelis K. Armstrong |
| vs. | : | MEMORANDUM DECISION & ORDER |
| City of Toledo Law Department, et al., | : | |
| Defendants. | : | |

The parties have consented to the Magistrate's jurisdiction in this civil rights case filed pursuant to 42 U. S. C. § 1983.  Pending are Defendants' Motion for Protective Order and Memorandum in Support (Docket No. 17), Plaintiffs' Motion Opposing Protective Order and the Allowance of Identity of Confidential Informant and Taking of his Deposition (Docket No. 18) and Defendants' Reply to Plaintiffs' Motion in Opposition to a Protective Order (Docket No. 20). For the reasons that follow, the undersigned DENIES Defendants' Motion for Protective Order consistent with the protections, provisions and limitations set forth below.

**I.  Jurisdiction**

This Court has jurisdiction over the subject matter and the parties pursuant to 28 U. S. C. §§ 1331, 1343.

**II.  Parties.**

(1)  Plaintiff Michael Hunt at all times relevant to these proceedings, allegedly was an adult male citizen of the United States,  residing at 2082 North 12th Street, City of Toledo,

1

County of Lucas, State of Ohio 43620.

(2)  Plaintiff Janet Hunt at all times relevant to these proceedings, allegedly was an adult female citizen of the United States, residing at 2082 North 12th Street, City of Toledo, County of Lucas, State of Ohio 43620.

(3) Defendant City of Toledo, allegedly, is a municipal entity in the State of Ohio, which engages and employs police officers.

(4) Defendants Officers John Does, City of Toledo, allegedly, are various unnamed law enforcement officers engaged or employed by the City of Toledo Department of Police

(5)  Defendant Detective Eric Sweat, allegedly, is a police/law enforcement officer detective engaged or employed by the City of Toledo, Department of Police.

**III  Procedural Background.**

On December10, 2010, the above named Plaintiffs filed their Complaint with Jury Demand in Lucas County Court of Common Pleas, Civil Division, Lucas County, Ohio, Case NO. CI 02010 08269, alleging deprivation of civil rights under 42 U.S.C. § 1983.  (Docket No. 1).  On December 22, 2010, Defendants filed a Notice of Removal pursuant to 28 U.S.C. § 1441, alleging federal question as the basis of jurisdiction.  (Docket No. 1).  On February 25, 2011, Defendants filed their Answer to Plaintiffs' Complaint with Jury Demand Endorsed Hereon. (Docket No. 7)**.**

On March 7, 2011, pursuant to 28 U.S.C. § 636(c) and  Fed.R.Civ.P. 73, Judge David A. Katz, United States District Court for the Northern District of Ohio, Western Division, issued an Order of reference, pursuant to the parties' consent, transferring this case to the undersigned for

all further proceedings and entry of judgment.

On May 18, 2011, Defendants filed their Motion for Protective Order.  On June 8, 2011, Plaintiffs filed their Opposition.  On June 30, 2011, Defendants filed their Reply.

The is case is presently before this Court on the matters raised in Defendants' Motion for Protective Order.

**IV.  Factual Background**.

**Execution of Search Warrant**

Set forth below are facts or alleged facts pertinent to this case and the Motion for Protective Order presently before this Court.

At approximately 10:40 p.m., on March 24, 2010, approximately ten to twelve members of the City of Toledo Department of Police, in furtherance of the execution of a Search Warrant, did enter premises located at 2082 North 12th Street, Toledo, Ohio. (Plaintiffs Complaint, Docket No. 1, 3).

Plaintiffs Michael Hunt and Janet Hunt resided in and were occupying the North 12th Street premises at the time of the above referenced event, i.e. raid.  Id.

During and subsequent to the raid various interactions took place between the officers executing the Search Warrant and the persons and property located within and around said premises.  (Plaintiffs' Complaint, Docket No. 1, 3-6).

No crack cocaine, drug purchases or other items or materials indicative of illegal drug processing or illegal drug distribution activities referenced in the Search Warrant were observed by law enforcement in or about the premises during or after the raid.  (Plaintiffs' Motion Opposing, Docket No. 18, 5, 6, 11).

3

A handgun and a small amount of marijuana were observed on the premises by law enforcement and seized.  (Plaintiffs' Motion Opposing, Docket No. 18, 11, 14).  Plaintiff's were handcuffed, taken into custody, arrested and booked.  (Plaintiffs' Motion Opposing, Docket No. 18, 5,6 14).   Plaintiffs were charged with obstructing official business and a minor misdemeanor marijuana possession charge, the latter of which was resolved with court costs and fine only (Plaintiffs' Motion Opposing, Docket No. 18, 5, 14).  The handgun seized by the Toledo Police Department during the raid was eventually returned to Plaintiffs.  (Plaintiffs' Motion Opposing, Docket No. 11).

**Obtaining Search Warrant**

On March 24, 2010,  City of Toledo Department of Police Defendant Eric Sweat, signed an Affidavit for Search Warrant setting forth the assertions of fact and alleged basis for obtaining the Search Warrant.  Detective Sweat presented the Affidavit and Search Warrant to a judge of the Toledo Municipal Court of the City of Toledo, Lucas County, Ohio.  (Plaintiffs' Motion Opposing Protective Order, Docket No. 18, attachment 1).

Thereafter, also on March 24, 2010, prior to the raid, the judge signed and issued the Search Warrant upon which basis the raid, described above, occurred.  (Plaintiffs' Motion Opposing Protective Order, Docket No. 18, attachment 2).

The judge based his probable cause determination and, thus, his decision to sign and issue the Search Warrant authorizing the search, upon statements averred by Detective Sweat as set forth in the Affidavit for Search Warrant.

Detective Sweat's Affidavit purportedly contains various statements and assertions of fact that criminal activity had been taking place at 2082 North 12th Street, Toledo, Ohio.  The

4

Affidavit included statements and references to communications made between Detective Sweat and a Confidential Informant (CI) as well as statements and references to observations made by Detective Sweat of the CI.  These statements and references are:

> During the month of March 2010, the vice officer received information from an informant of large amount of crack being processed and sold at a location of 2082 N. 12th St. Toledo, Ohio.

> This affiant met with a CI who stated he/she could buy Crack Cocaine from the residence at 2082 N. 12th St.  The CI was driven to the location of 2082 N. 12th St. and this affiant searched the CI for any money and/or contraband and he/she was given money from the Vice/Metro fund to purchase Crack Cocaine.  This affiant observed the CI enter the residence, using the front door and exit the same door of the residence a short time later. The CI returned directly to the Detective and handed me a substance, which field-tested positive for the presence of cocaine.  The CI stated he/she entered the front of the apartment and bought the crack from a male resident.  This occurred March 22, 2010. The affiant conducted surveillance after the controlled buy and found the same activity occurring.

> The aforementioned CI has supplied information that has proven to be independently verified as credible and accurate.  The confidential informant involved fears for his/her safety and wishes to remain silent and anonymous.

(Plaintiffs' Motion Opposing Protective Order, Docket No. 18, attachment 1).

## V.  Motion for Protective Order

Defendants seek a Protective Order prohibiting the identification and deposition of the Confidential Informant who provided information to Detective Sweat that, in whole or part, lead to the issuance of the Search Warrant which, in turn lead to the events of March 24, 2010, narrated, above.

### Federal Rules of Civil Procedure Rule 26(c)

Rule 26(c), reads, in pertinent part

(c) Protective Orders.

(1) In General. A party or any person from whom discovery is sought may move

5

for a protective order . .  The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense,

Fed.R.Civ.Pro. 26(c)(1)

Court's have substantial latitude in fashioning a Rule 26(c) protective order, including, for example, forbidding the disclosure or discovery; specifying terms, for disclosure or discovery; designating persons who may be present while discovery is conducted, etc.  See Fed.R.Civ.Pro. 26(c)(1)(A) through (H)

Under Federal Rule of Civil Procedure 26(c) a party may seek a protective order based on good cause, and a court's decision to grant such motion is within it's sound discretion.  See Procter & Gamble Co. v. Bankers Trust Co., 78 F.3d 219, 227 (6th Cir. 1996).

The Sixth Circuit has tempered this discretion, advising that it is "limited by the careful dictates of [Rule] 26 and is circumscribed by a long-established legal tradition which values public access to court proceedings."  Id.  (citing Brown & Williamson Tobacco Corp. v. FTC, 710 F.2d 1165, 1177 (6th Cir. 1983)).  Accordingly, district courts cannot "abdicate [their] responsibility to oversee the discovery process and to determine whether filings should be made available to the public."  Id.

**Informant's Privilege**

Related to, but distinguishable from, matters pertinent to Rule 26(c) protective orders is the so called "informant's privilege."

The informant's privilege is well recognized in criminal prosecutions. See Roviaro v.

6

United States, 353 U.S. 53, 59, 1 L. Ed. 2d 639, 77 S. Ct. 623 (1957).[1]

The government has the "privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." Roviaro, supra, 353 U.S. at 60.  "The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law enforcement officials and, by preserving their anonymity, encourage them to perform that obligation."  Id.

No "fixed rule" rule establishes when disclosure of a confidential informant's identity supercedes  the government's privilege.  Roviaro, 353 U.S. at 62.  In addressing this issue courts are to balance varying interests including a parties' need for the putatively protected information to enable them to mount an effective defense and the public's concern for effective law enforcement and the importance of encouraging and protecting citizens who provide the police with information about criminal activity.  See  Roviaro, 353 U.S. at 60-61; United States v. Moore, 954 F.2d 379, 381 (6th Cir. 1992).

Determining the proper balance between disclosure and protecting the interests of those who come forward with information is ultimately and essentially dependent upon the specific

_____

[1]  In Roviaro, a criminal defendant was convicted of selling heroin to a confidential informant, who was the only witness to the crime, as well as being a material participant in it. Defendant Roviaro sought the informant's testimony at trial as part of his defense.  The government asserted a privilege to keep the identity of the informant secret. The Court stated:

> [What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of the law to officers charged with enforcement of that law. The purpose of that privilege is the furtherance and protection of the public interest in effective law enforcement … [a] … limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity … is relevant and helpful to the defense of the accused, or is essential to a fair determination of a cause, the privilege must give way.  Roviaro, supra, 353 U.S. at 59-61.

7

circumstances of the case in question.  When determining whether the informant's privilege should be applied in a criminal prosecution, courts will look at the nature of the crime charge, the related defenses, the importance of the informant's testimony and other factors.  Roviaro, 353 U.S. at 60-61; accord, Moore, 954 F.2d at 381.  "An informant must be disclosed only upon a showing by the defendant that disclosure is essential to a fair trial."  Moore, 954 F.2d at 381 (citing United States v. Hanna, 341 F.2d 906, 907 (6th Cir. 1965)); accord, United States v. Miller, 227 Fed. Appx. 446, 2007 WL 930425 *4 (6th Cir. 2007); United States v. Cole, 2009 U.S. Dist. LEXIS 17650, 2009 WL 596008 (E.D.Tenn. Mar. 6, 2009) (Shirley, J.).

 "Although there is no fixed rule, disclosure has usually been required when … the informer was an active participant in the events underlying the defendant's criminal liability.  On the other hand, disclosure has usually been denied when the informer was not a participant, but was a mere tipster or introducer."  United States v. Sharp, 778 F.2d 1182, 1186 n. 2 (6th Cir. 1985) (internal citations omitted). See also United States v. Parks, 2009 U.S. Dist. LEXIS 48308, *12-*14 8 (E.D,. Tenn. June 9, 2009) (Carter, J.)  (defendant in criminal case sought discovery, including cell phone records and recordings of calls with government's confidential informant)

### Informant's Privilege in Civil Litigation

Despite Roviaro being a criminal case, the informant's privilege is also applicable to civil proceedings.  Holman v. Cayce, 873 F.2d 944, 946 (6th Cir. 1989) (informant's privilege is one of the privileges protected by Rule 26(b)(1), Federal Rules of Civil Procedure, which provides that "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.").  See, also,  Bergman v. United States, 565 F. Supp. 1353, 1360 (W.D. Mich. 1983);  8 Wright & Miller § 2019.

8

The principles courts use to analyze and apply the informant's privilege in criminal prosecutions, as described in Roviaro, Moore, and Sharp, supra, are also used to analyze and apply the informant's privilege in civil matters.

The Sixth Circuit in Holman, supra, looked at the manner in which courts address the informant's privilege in civil versus criminal contexts, stating, "this distinction [civil versus criminal] should be treated only as one of the factors utilized in a Roviaro balancing; it does not, by itself, warrant … [asserting that] a higher standard of justification must be satisfied in civil cases in order for an exception to the privilege to be recognized, since it cannot be said that all civil cases are less significant than all criminal cases."  Holman, supra, 873 F.2d 944, 946-47. Therefore, whether in  the civil or the criminal context, the question of whether an informant's identity or information shall be subject to an order of protection requires a careful balancing of various relevant factors in the particular case in question.

Determining the importance of the identity or information of a confidential informant  is a matter of law for the trial judge and requires balancing the plaintiff's need for information with both the defendant's and the confidential informant's interest in non-disclosure.  Roviaro, supra, 353 U.S. at 62.

Factors weighed in making this determination include, but are not limited to:

(1) in civil disputes, rather than criminal prosecutions, the plaintiff is not in jeopardy of conviction and imprisonment;

(2) the nature and extent to which the CI is under defendants' authority, supervision or control;

(3) whether defendant's reluctance to produce the CI gives rise to a presumption that the CI's testimony would be adverse to defendant's interests;

(4) whether, and to what extent, the CI's testimony might shed light on events

surrounding plaintiff's allegations related to the issuance and/or execution of the search warrant;

(5) whether, and to what extent, the affidavit upon which the search warrant was issued included and/or relied upon information provided by the CI;

(6) whether a hypothetical affidavit, essentially identical to the affidavit in question, but stripped of reference to the CI, would have contained sufficient facts to support the issuance of a search warrant;

(7) whether the CI was present at and/or participated in the execution of the search warrant;

(8) concern for the safety and welfare of the CI, were his/her identity to be disclosed;

(9) concern for the ongoing willingness of the CI and his/her future usefulness to law enforcement, were his/her identity to be disclosed;

(10) concern for the chilling effect on CIs, generally, were knowledge of disclosure of a specific CI's identity to become widespread.

See, e.g., McCray v. Illinois, 386 U.S. 300, 18 L. Ed. 2d 62, 87 S. Ct. 1056 (1967) (discussing various factors weighed in making the determination of whether to protect or disclose the identity of a confidential informant).

Accordingly, the principles used to evaluate the proper application of the informant's privilege, as established in Roviaro, are suitable to civil matters, and disclosure of the identity or information of a confidential informant shall not be compelled unless it is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." Roviaro, supra, 353 U.S. at 53.

**Informant's Privilege and Civil Actions Under 42 U.S.C. § 1983**

In May v. City of Detroit, 2010 U.S. Dist. LEXIS 33060 (E.D. Mich., S.D., April 5, 2010), the District Court issued an order granting in part and denying in part defendants' objections to the order of a magistrate judge regarding the deposition of a confidential informant.

10

The facts of <u>May</u> are remarkably similar to the facts of the case presently before this Court.

<u>May</u> was a 42 U.S.C. § 1983 action against the City of Detroit and several City of Detroit police officers alleging a violation of Fourth Amendment rights in connection with a search of plaintiffs' home.  Plaintiffs claimed that their house had been misidentified as the target of a police drug raid.  Accordingly, plaintiffs challenged the search warrant, arguing that it was not supported by probable cause, and they challenged the reliability of the confidential informant who provided information that was incorporated into the search warrant. <u>May</u>, 2010 U.S. Dist. LEXIS 33060, *2.  Plaintiff's sought to depose the CI.

In <u>May</u> similar to the case at bar, a City of Detroit police officer met with the CI and set up a controlled buy.  The officer searched the CI prior to sending him to make the buy, determined that the CI had no drugs, weapons or money on his person, and gave the CI money to make the purchase.  The police officer observed the CI enter the target premises and return shortly thereafter with cocaine, which the CI stated had been purchased inside the target premises. After tests were done confirming that the purchased substance was cocain, a search warrant was obtained and a  raid of the target premises ensued, yielding nothing.  A few weeks later there was a raid on the house next door to the target premises which was productive.  <u>May</u>, 2010 U.S. Dist. LEXIS 33060, *2-*4. .

Subsequent to a hearing on the matter, the presiding magistrate issued an order that "[t]he gravamen of plaintiffs' case relates to the search warrant executed at plaintiffs' residence and Informant # 2149 was a central figure in obtaining that search warrant because information provided by Informant # 2149 was the only nexus to the residence." .  <u>May</u>, 2010 U.S. Dist. LEXIS 33060, *4

11

Defendants appealed the magistrate's decision pursuant to 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a), which provide that a district court judge may modify or set aside a magistrate's non-dispositive pretrial order if it is found to be clearly erroneous or contrary to law.

The Defendants in <u>May</u> argued that the testimony of the CI was not essential to the plaintiffs' case because, in addition to the CI, the officer who was handling the CI had personally observed the events that lead to the controlled buy.   Plaintiffs' argued, to the contrary, that "the testimony of the [CI] is necessary to determine the credibility of [the officer] and the accuracy of his observations on the day of the search."  <u>May</u>, 2010 U.S. Dist. LEXIS 33060, *8

District Judge Borman wrote:

> The Court concludes that the Magistrate Judge's Order, which strikes a balance between Plaintiffs' need for relevant information with the Defendants' interest in nondisclosure, is not clearly erroneous or contrary law. The Magistrate Judge's Order only requires Defendants to divulge the identity of Informant # 2149 in the event that Defendants cannot produce the informant for a deposition under the conditions set forth in the Order, which the Court concludes adequately balance  the needs of both parties. Pursuant to the Order, Plaintiffs will be able to question Informant # 2149, whose true identity will never be disclosed, and Plaintiffs' counsel is prohibited from disclosing any information gained in the deposition that could be used to identify Informant # 2149. The Court interprets the Magistrate Judge's Order to require that the physical identity of Informant # 2149 will be protected during the course of the deposition.

<u>May</u>, 2010 U.S. Dist. LEXIS 33060, *8-*9.

Also, instructive on the issues before this Court  is <u>Smith v. City of Detroit</u>, 212 F.R.D. 507, 2003 U.S. Dist. LEXIS 149 (E.D. Mich., S.D., January 7, 2003).  The underlying facts of <u>Smith</u> are also similar to the facts of the instant case.

> The Plaintiffs, Joseph Smith and Barbara Smith (the "Smiths"), are an elderly husband and wife. The Smiths reside in a single family home in a residential neighborhood on Detroit's east side. This action arose because of a drug raid executed on their home by Detroit Police Officers (the "Defendants"). The incursion was based on a search warrant

predicated, at least in part, on information which the affiant swore he had obtained from a confidential informant known as SOI # 403 (the "CI"). The Smiths are alleging assault and battery, deprivation of civil rights under 42 U.S.C. § 1983, and false arrest and imprisonment in the lawsuit they have filed.

Smith, supra, 212 F.R.D., at 508, 2003 U.S. Dist LEXIS 149, *1.

Smith was before the District Court on a Fed.R.Civ.P. 72(a) motion by defendant City of Detroit to modify or set aside a decision of the district court magistrate judge.  Plaintiff had previously filed, before a magistrate judge, a Motion to Compel Production of Confidential Informant For Purposes of Previously Ordered In-Camera Hearing.  The magistrate issued an order that (1) defendants produce the CI for an in camera deposition and (2) if defendants failed to so produce the CI that they provide information specifying the identity and location of the CI to enable plaintiffs to find the CI for the purposes of taking a deposition.  Smith, supra, 212 F.R.D., at 508, 2003 U.S. Dist LEXIS 149, *2-*3.

The district court ruled, inter alia, that defendant's motion to reconsider the first mandate of the magistrate's order was denied, upholding the magistrate judge's earlier ruling that defendant City of Detroit should make the CI available for an in camera deposition..  Smith, supra, 212 F.R.D., at 509, 2003 U.S. Dist LEXIS 149, *7

In Smith, the district court addressed, at length, the application of the informant's privilege  in the context of  a 42 U.S.C. § 1983 where the defendant sought to protect the identity of its confidential informant.

The district court first distinguished cases where warrantless searches were undertaken based on communications between law enforcement and a confidential informant, noting that in such cases, "the Government has been required to disclose the identity of the informant unless there was sufficient evidence to uphold the warrant apart from the confidential communication."

13

Smith, supra, 212 F.R.D., at 509, 2003 U.S. Dist. LEXIS 149, *7.

With respect to cases where law enforcement had obtained a search warrant prior to conducting a search, the court wrote, "The existence and credibility of the CI goes directly to the issue of the integrity of the efforts used to obtain the search warrant." Smith, supra, 212 F.R.D., at 510, 2003 U.S. Dist LEXIS 149, *8. See, Hampton v. Hanrahan, 600 F.2d 600, 620-21 (7th Cir. 1979), rev'd in part on other grounds, 446 U.S. 754, 100 S. Ct. 1987, 64 L. Ed. 2d 670 (1980) (civil rights action brought against both federal and state law enforcement involving questions of the government's claim of privilege for the identity of an informant whose representations were critical in leading to the issuance of a search warrant, Seventh Circuit holding that a fair adjudication of the plaintiffs' claims required disclosure of the informant's identity subject to a restrictive order). See, also. Bergman v. United States, supra, 565 F. Supp.1353.  (allowing production subject to a protective order) and  Myers v. Koopman, 2010 U.S. Dist. LEXIS 46652 (D. Colo., April 13, 2010) (lengthy discussion of informant's privilege and Rule 26(c) in context of 42 U.S..C § 1983 action; plaintiff alleged illegal entry and search of property against defendants municipality, law enforcement agents and various city and county administrators, holding that disclosure of names of informants prohibited but that defendants shall disclose such relevant information as may have been provided by confidential informants in accordance with Fed. R. Civ. P. 26(a)).

### Protective Order and the Current Case

The purpose of the instant Memorandum Decision and Order is only to resolve Defendants' Motion for Protective Order.  With this end in mind, this Court looks to Plaintiffs' claims only for the purpose of identifying those material issues as to which deposition testimony

14

of the CI could have any reasonably conceivable relevance or probative value.  If there are material issues as to which the CI's deposition testimony could possibly be relevant, the Court then must determine if such testimony is not only relevant but also critical to the Plaintiffs' ability to prosecute their case.  In turn, if such testimony is critical to Plaintiffs' case , the Court must determine if the Plaintiffs' need for such testimony supports the formidable burden Plaintiffs' must carry to justify supplanting the informant's privilege.

Plaintiff alleges, inter alia, assault, battery, false imprisonment, verbal harassment and similar charges against Defendants.[2]  However, neither in Plaintiffs' Complaint (Docket No. 1) nor their Motion Opposing (Docket No. 18)  nor in the deposition of Detective Sweat (Docket No. 1, attachment 3) is there any indication that the CI was either present at or had participated in the March 24, 2010 raid of Plaintiffs' premises.  Thus, no deposition testimony by the CI could possibly be relevant to these material issues embodied in Plaintiffs' Complaint.

However, in addition to the above listed claims, Plaintiffs also claim deprivation of their rights to be free from unlawful searches and seizures under Fourth Amendment.  It is with respect to this issue that the CI's deposition testimony could be relevant.

The central question underlying Plaintiffs' Fourth Amendment claim is simple: whether the information contained in the Affidavit for Search Warrant was true and supported by credible knowledge, information and observations of affiant Detective Sweat.

Thus, whether the police had probable cause to enter Plaintiffs' residence is ultimately and uniquely dependent upon the validity of the Search Warrant issued by the authorizing judge;

---

[2]  These claims are distinguishable in that they arise out of the conduct of police and the nature and character of the interactions of police with Plaintiffs or Plaintiffs' property during or immediately after the execution of the warrant.

15

the validity of the Search Warrant issued by the judge is wholly dependent upon the facts and information averred and attested to by Detective Sweat in his Affidavit for Search Warrant; the reliability of the Affidavit as the instrument that supported the issuance of the Search Warrant is finally dependent upon the truthfulness and reliability of the averments attested to by Detective Sweat which, in turn, are dependent, in whole or part, upon Detective Sweat's communications with and observations of his CI.

Accordingly, it is, at a minimum, reasonably conceivable that the CI's deposition testimony could be relevant to the Fourth Amendment claims asserted by Plaintiffs.[3]

In their Motion for Protective Order Defendants base their opposition to the requested disclosure of the identity and/or information of the CI on three arguments: (1) the CI was not present at the execution of the Search Warrant; (2) the CI was not present when Detective Sweat

---

[3]  In their Motion Opposing Plaintiffs (and, perforce, Defendants in their Reply brief) refer at some length to a person by the name of  "Gabrial Taylor."  Plaintiffs claim that Taylor provided the CI with information: that illegal drug activities were taking place within the premises located at 2082 North 12th St., Toledo, Ohio (Plaintiffs' Motion Opposing, Docket No., 18, 3); and that Taylor had utilized various locations and premises to engage in illegal drug activities. (Plaintiffs' Motion Opposing, Docket No. 18, 12).  Plaintiffs also assert that Taylor relayed information to the CI, including that a black male and a black female resided at 2082 North 12th St. (Plaintiffs' Motion Opposing, Docket No. 18, 3, 4, 9).  Additionally, Plaintiff asserts that there is no information that Taylor ever resided at 2082 North 12th St., or that he is a reliable provider of information or that he even exists.  (Plaintiffs' Motion Opposing, Docket No. 18, 9-10, 12, 13).

Additionally, at his May 13, 2011 deposition, Plaintiffs' counsel asked Detective Sweat numerous questions about Gabrial Taylor, e.g., whether the Detective knew Gabrial Taylor, where he lived, the nature of his involvement with the CI, etc.. (Plaintiffs' Motion Opposing, Docket No. 18, attachment 3, Deposition of Eric Sweat, 15, 16, 17, 29, 30, 33, 36, 39, 40, 42, 46, 47, 48, 49, 51, 53, 55, 56, 57, 58, 61, 62).

However, neither Gabrial Taylor nor the nature of his alleged involvement with either the CI or Plaintiffs are considerations that guide or inform the Court's decision on the matter of Defendants' Motion for Protective Order.

made his own independent observations of the various indicators of allegedly illegal activity supposedly occurring at 2082 North 12th Street; and (3) disclosing the identity of the CI could place the CI and/or his/her family in jeopardy and that this concern outweighs Plaintiffs' need for any information that Plaintiffs might obtain from a deposition of the CI.

In support of their first argument Plaintiffs note: "where the informant was neither a witness to nor an active participant in the conduct which gave rise to the civil cause of action, the party seeking to compel disclosure of the identity of a confidential informant will shoulder a formidable burden in establishing a justification for overriding the privilege." Holman, supra, 873 F.2d at 947.  (emphasis added).  This Court has already noted that the CI's deposition testimony could have no conceivable utility or application to the assault, battery, false imprisonment or other similarly related claims that arose out of events and interactions between police and Plaintiffs during or after the raid, as there have been no allegations that the CI witnessed or participated in such events.

However, as to events leading up to and which gave rise to the issuance of the Search Warrant, the CI's deposition testimony could be relevant.  On these matters this Court views the CI's deposition testimony as having a necessary and critical significance to Plaintiffs' ability to proceed with their case.

Defendants' assert in their Reply brief, "Even without the information from the CI, the activities undertaken by Det. Sweat, i.e., his surveillance and the controlled buy, were sufficient to justify the issuance of a search warrant. (Sweat Dep. At p. 36)" (Defendants' Reply, Docket No. 20, 3-4).  This Court is not convinced of the merit of the legal conclusion that Defendants reach regarding the supposed probable cause sufficiency of the such hypothetical Affidavit for Search Warrant cleansed of the influence of the CI.

17

Additionally Defendants argue that, "The search warrant was authorized based on the information compiled through Det. Sweat's surveillance and the controlled buy." (Defendants' Reply, Docket No. 20, 4). Yet, the fact is that it was the <u>CI</u> and not Detective Sweat who made the controlled buy at Detective Sweat's behest. (Plaintiffs' Motion Opposing, Docket No. 19, Attachment No. 2, Affidavit for Search Warrant).

Defendants also argue "the results of the search warrant are not relevant to the issue of whether the search warrant was properly given, and in no way are they relevant to the CI's information." (Defendants' Reply, Docket No. 20, 4). While it may be true, from a technical standpoint, that the results of the search of Plaintiffs' premises, coming up empty as they did, do not, with legal necessity and logical compulsion, reflect back on the legal sufficiency of the Affidavit for Search Warrant, the results of the search nonetheless, as a practical matter, do give rise to questions regarding the viability of the factual basis of the information that was averred in the Affidavit and, in turn, to concerns about which the deposition testimony of the CI could prove useful. In this regard, Defendants' would seem to want this Court to dismiss the significance of the fact that the raid came up empty handed. Certainly, it is fair to suggest that had the raid produced different results (e.g., cocaine, crack and related tools of the trade) it is unlikely that Plaintiffs would be bringing the instant action. However, the raid did not yield the sought after contraband and thereby raises the question of whether there was, in the first place, a justifiable basis for it.

Without the CI, the Court is left with only Detective Sweat's statements concerning what the CI said to him, Detective Sweat's statements about what he observed the CI do, and Detective Sweat's statements regarding other information which he claimed to have obtained by himself outside the presence of and without the assistance of the CI as the predicates to the

18

averments he made in his Affidavit.  Accordingly, as to the viability of Plaintiffs' Fourth Amendment claims, deposition testimony from the CI that could either corroborate or dispute Detective Sweats' averments is not only relevant but critical.

This Court's response to Defendants' second argument, that Detective Sweat made his own observations of activities occurring at 2082 North 12th St. unaccompanied by and independent of the CI has been addressed, albeit indirectly, in its analysis of Defendants' first argument, above.   For purposes of this discussion this Court assumes that Detective Sweat indeed made his own, independent observations, unaccompanied by the CI.  However, as noted above, Detective Sweat specifically referred to his CI in the Affidavit.  That the CI was referred to specifically in the Affidavit is a fact that elevates the significance of the CI and the information he/she provided to Detective Sweat.  This, in turn, elevates the significance of the CI with respect to the sufficiency and reliability of the facts set forth in Detective Sweat's Affidavit.

Without deposition testimony from the CI the Court is left with only Detective Sweat's representations to look to when assessing the Fourth Amendment component of Plaintiffs' claims.[4]  That being so, the only potential counterweight to Detective Sweat's representations

---

[4]  "The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. Crime, even in the privacy of one's own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent."  Johnson v. United States, 333 U.S. 10, 13-14 (1948) (Justice Jackson

regarding the matters that lead to the issuance of the search warrant are such representations as may be made by the CI concerning these matters.  Accordingly, it seems fair to say that Plaintiffs' case rests on an insubstantial foundation without such testimony as the CI might offer.  Thus the "formidable burden" that Plaintiffs' must shoulder to override the application of the informant's privilege in this case is that without deposition testimony from the CI there is little, if any, likelihood that Plaintiffs could proceed further in this litigation.

In this regard, it is important to reiterate that the probable cause issue in this case rests on the adequacy and sufficiency of the Affidavit that supported the issuance of the Search Warrant.  Because of the importance of the Affidavit this Court is compelled to acknowledge that a proper assessment of that issue necessarily entails a credibility question as to the immediate source of the information contained in the Affidavit, i.e., Detective Sweat.  Whether or not the Toledo Police Department's prescribed procedures for proper performance of surveillance include, inter alia, requirements for recording or otherwise memorializing observations made while on surveillance, the fact remains that the only currently available source to support or corroborate the averments Detective Sweat made in his Affidavit is Detective Sweat himself, since, as he has repeatedly acknowledged, he did nothing to record any of the events that preceded and lead to the raid of March 24, 2011.[5]  (Plaintiffs' Motion Opposing, attachment 3, Deposition of Eric

writing for the Court).

[5]     The Toledo Police Department Special Enforcement Bureau Vice/Metro Section Manual, in the section, Standard Operating Procedures, subsection, Support Surveillance, § 200.42, states, with regard to the responsibilities of an undercover investigator "During extended undercover assignments, notes should be made by an investigator, whenever possible, as later he will have to remember and testify as to who said and did things.  Moreover, places, times and dates will have to be recalled.  The importance of sound reports notwithstanding, the undercover investigator should only make those notes, which are necessary to provide information for reports" (Defendants' Reply to Plaintiffs' Motion in Opposition, attachment 1, 44).  The

Sweat, 18, 20, 21, 24, 25, 26, 31, 32 (deposition testimony about not recording)).  With no intent to impugn Detective Sweat's integrity, a situation of this kind is ripe for all manner of mistake or misinterpretation.

Defendants' third argument, that disclosing the CI's identity could likely place the CI and/or his/her family in jeopardy is duly noted.  The welfare and safety of a CI is a critical factor that must be weighed in any case that addresses the informant's privilege. The Court also acknowledges that the City of Toledo Police Department continues to consult the CI on several active investigations.  (Defendants' Reply, Docket No. 20, Attachment No. 2, May 18, 2011, Affidavit of Detective Eric Sweat)

This Court does not take lightly its responsibility to protect the welfare and safety of the CI and the CI's family as well as the integrity of ongoing Toledo Police Department investigations.  However, protective measures can be imposed to insure the safety of the CI and guarantee his/her anonymity while concurrently furthering the interests of justice by allowing Plaintiffs to have fair access to information that could have a crucial impact on their case.

As this Court has previously noted in discussion of the various factors that courts have looked at when addressing challenges to the informant's privilege, See, McCray supra, CI welfare is only one among several considerations that a court might address in evaluating a motion for protective order based upon an assertion of the informant's privilege.

Reviewing these factors in the current case this Court is persuaded that, if undertaken

---

procedures referenced herein do not necessarily apply to TPD surveillance requirements, generally, but they do indicate that TPD places a value on assuring that its officers gather correct and reliable information in a way that will useful after the surveillance has been terminated and establish that the Department recognizes that note taking and other recordings of events may be useful to that end.

with all proper and necessary care and precautions, both fairness to the Plaintiffs and protection of the CI"s safety can be achieved.

**VII.  Conclusion.**

For these reasons, the undersigned DENIES Defendants' Motion for Protective Order and orders that Defendants' Confidential Informant be produced for an in camera deposition and that Defendants shall produce the Confidential Informant to the undersigned in such a manner and with such precautions, safeguards and conditions by this Court and counsel for Plaintiffs and Defendants that Defendants' Confidential Informant's safety and welfare shall be secured and identity be protected from disclosure or dissemination.  The scope of the deposition shall be limited to the CI's knowledge and activities in relation to 2080 and 2082 North 12th Street, Toledo, Ohio.  Other specific  precautions, safeguards and conditions pertaining to the deposition of the CI shall be established pursuant to a conference with counsel for parties and subsequently issued as an Order of this Court prior to the deposition.


IT IS SO ORDERED.

                                           s/   *Vernelis K. Armstrong*                              
                                          VERNELIS K. ARMSTRONG
                                          UNITED STATES MAGISTRATE JUDGE


Date:   January 27, 2012

22