**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL HUNT, et al.,** | : | **Case No. 3:10 CV 2896** |
| **Plaintiffs,** | : | |
| **v.** | : | **AMENDED MEMORANDUM DECISION AND ORDER** |
| **CITY OF TOLEDO, et al.,** | : | |
| **Defendants.** | : | |

## I. INTRODUCTION

In accordance with the provisions of 28 U. S. C. § 636 and FED. R. CIV. P. 73, the parties

have consented to the undersigned Magistrate Judge conduct all proceedings in this civil rights case

filed pursuant to 42 U. S. C. § 1983.  On July 30, 2012, the Magistrate granted Defendants' Motion

for Summary Judgment as to Counts One, Three, Four, Five and Six but retained jurisdiction over

Count Two of Plaintiffs' Complaint.  A conference was conducted on July 31, 2012, during which

Defendants made an oral motion for reconsideration.  After consideration of the parties' written and

oral arguments, the Magistrate finds that Defendants' arguments are well taken and grants the

motion for reconsideration.  The Magistrate amends the Memorandum Decision and Order to

incorporate review of Count Two, Plaintiffs' Fourth Amendment claims (Docket No. 41).  For the reasons that follow, the undersigned grants Defendants' Motion for Summary Judgment as to Count Two of Plaintiffs' Complaint (Docket No. 28).

## II.  THE ISSUE

In Count Two, Plaintiffs claim that the Defendant City of Toledo and Sweat violated Plaintiffs' Fourth Amendment rights to be free of excessive force during the service of a search warrant.

Defendants claim that even assuming that Plaintiffs can establish a colorable constitutional violation of excessive force, Plaintiffs have failed to allege or prove a custom or policy of the City of Toledo and Detective Sweat is entitled to a finding of qualified immunity.  Defendants seek an order dismissing Count Two or Plaintiffs' Fourth Amendment claims and granting their Motion for Summary Judgment.

## III. SUMMARY JUDGMENT STANDARD OF REVIEW.

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Averill v. Gleaner Life Insurance Society*, 626 F. Supp.2d 756, 761 (N. D. Ohio 2009 (*citing Celotex Corporation v. Catrett,* 106 S. Ct. 2548, 2552 (1986)).  The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  *Id.* (*citing Celotex*, 106 S. Ct. at 2552-2553).  The burden shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial."  *Id*. (*citing Anderson v. Liberty Lobby, Incorporated,* 106 S. Ct. 2505, 2511 (1986) (*quoting* FED. R.

CIV. P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  *Id*.  It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts."  *Id.* (*citing Matsushita Electric Industrial Company v. Zenith Radio Corporation,* 106 S. Ct. 1348, 1355 (1986)).  Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of concrete evidentiary material in support of its position.  *Id.* (*citing Celotex, supra,* 106 S. Ct. at 2553).

In deciding the motion for summary judgment, the evidence of the non-moving party will be believed as true, all doubts will be resolved against the non-moving party, all evidence will be construed in the light most favorable to the non-moving party, and all inferences will be drawn in the non-moving party's favor.  *Id.* (*citing Eastman Kodak Company v. Image Technical Services, Incorporated,* 112 S. Ct. 2072, 2076 (1992)).  Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law.  *Id.* (*citing Celotex, supra,* 106 S. Ct. 2552).

## IV.  THE CITY'S LIABILITY UNDER SECTION 1983.

To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law.  *Sigley v. City of Parma Heights*, 437 F. 3d 527, 533 (6th Cir. 2006) (*citing West v. Atkins*, 108 S. Ct. 2250, 2254 (1988); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994)).  Section 1983 does not permit a plaintiff to sue a local government entity on the theory of *respondeat superior.  Gregory v. City of Louisville,* 444

3

F.3d 725, 752 (6th Cir. 2006) *cert. denied sub. nom Tarter v. Gregory*, 127 S. Ct. 962 (2007) (*citing Monell v. New York City Department of Social Services*, 98 S. Ct. 2018, 2036-2038 (1978)).

A plaintiff may only hold a local government entity liable under Section 1983 for the entity's own wrongdoing.  *Id*.  A local government entity violates Section 1983 where its official policy or custom actually serves to deprive an individual of his or her constitutional rights. *Id*.  A city's custom or policy can be unconstitutional in two ways:  1) facially unconstitutional as written or articulated, or 2) facially constitutional but consistently implemented to result in constitutional violations with explicit or implicit ratification by city policymakers.  *Id*.  Where the identified policy is itself facially lawful, the plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences.  A showing of simple or even heightened negligence will not suffice." *Id.* (*citing Board of County Commissioners v. Brown*, 117 S. Ct. 1382, 1389-1390 (1997) (*quoting City of Canton v. Harris*, 109 S. Ct. 1197, 1204 (1989)).  "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (*citing Brown*, 117 S. Ct. at 1391).  In other words, the risk of a constitutional violation arising as a result of the inadequacies in the municipal policy must be "plainly obvious." *Id.* at 752-753 (*citing Brown*, 117 S. Ct. at 1392; *see also Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997)).

Count Two of Plaintiffs' Complaint is construed, in part, as a 42 U. S. C. § 1983 claim against Defendant City of Toledo based upon *respondeat superior* liability for the use of excessive force by Defendants Sweat and/or Doe.  Reiterating that the City of Toledo may only be held liable where the entity itself committed the wrong or caused their employees to violate a person's constitutional rights, the Magistrate finds that Plaintiffs have merely identified conduct that is not

4

properly attributable to the municipality.  Fault and causation are not readily obvious in this case yet Plaintiffs have not alleged that the City of Toledo is the final policymaking authority with respect to the conduct challenged in the lawsuit or that through deliberate conduct, the City of Toledo was the moving force behind the injury alleged.  Neither have Plaintiffs identified a causal link between an obvious municipal policy nor custom and the alleged constitutional deprivation.  Plaintiffs are foreclosed from recovering from the Defendant City of Toledo for the actions of Defendants Sweat and/or Doe under principles of *respondeat superior*.

### V. DEFENDANT SWEAT'S LIABILITY UNDER SECTION 1983.

Defendant Sweat contends that as a matter of law, he is entitled to summary judgment on the basis that excessive force was not used when Plaintiffs were handcuffed and placed on the floor with hands atop their heads (Docket No. 36, Attachment 8, pp. 52-53 of 65).  Alternately, presuming that Defendant Sweat used excessive force, he asserts protection from liability by qualified immunity because his actions arose in the course of performing his official duties.

Plaintiffs allege that when executing a search warrant, the "police officers" subjected them to unreasonable force when they displayed and brandished a gun "accompanied with dire threats of their usage against Plaintiffs."  These acts are inapposite to the protections of the Fourth Amendment right to be free from excessive force during the execution of a search warrant.  It is Plaintiffs' contention that Defendants are not entitled to the protection from liability provided by qualified immunity.

### A. PRINCIPLES OF QUALIFIED IMMUNITY.

Through the use of qualified immunity, the law shields 'governmental officials performing discretionary functions . . . from civil damages liability as long as their actions could reasonably

5

have been thought consistent with the rights they are alleged to have violated.' "  *Baker v. City of Hamilton, Ohio*, 471 F.3d 601, 605 (6th Cir. 2006) (*citing Solomon v. Auburn Hills Police Department*, 389 F.3d 167, 172 (6th Cir. 2004) (*quoting Anderson v. Creighton*, 107 S. Ct. 3034, 3037 (1987)).  The Supreme Court instructs lower courts to perform a two-tiered inquiry to determine whether a defendant is entitled to qualified immunity.  *Id.* (*citing Saucier v. Katz*, 121 S. Ct. 2151, 2156 (2001)).  Courts should first determine whether "the facts alleged show the officer's conduct violated a constitutional right."  *Id*. (*citing Saucier*, 121 S. Ct. at 2156).  If the plaintiff establishes that a constitutional violation occurred, a court must next consider "whether the right was clearly established."  *Id.* (*citing Saucier,* 121 S. Ct. at 2156).  When a defendant raises a defense of qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity.  *Id.* (*citing Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)).

The Supreme Court has emphasized that the qualified immunity analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Id.* (*citing Saucier*, *supra*, 121 S. Ct. at 2156).  Thus, in the excessive force context, it is not enough that a plaintiff establishes that the defendant's use of force was excessive under the Fourth Amendment. *Id.* To defeat qualified immunity, the plaintiff must show that the defendant had notice that the manner in which the force was used had been previously proscribed:

> [T]here is no doubt that [precedent] clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness.  Yet that is not enough.  Rather, we emphasized in *Anderson* [*v. Creighton,*] "that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." . . . . The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

*Id.* at 605-606 (*citing Anderson, supra*, 107 S. Ct. at 3089; *Brosseau v. Haugen*, 125 S. Ct. 596, 598 (2004) (*quoting Saucier*, *supra*, 121 S. Ct. at 2156)).

"In inquiring whether a constitutional right is clearly established, we must look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits." *Id*. (*citing Champion v. Outlook Nashville, Inc*., 380 F.3d 893, 902 (6th Cir.2004) (*quoting Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002)), *cert. denied sub nom. Dickhaus v. Champion*, 125 S. Ct. 1837 (2005)).

**B.    CLEARLY ESTABLISHED CONSTITUTIONAL RIGHT.**

The use of excessive force in the execution of a search warrant constitutes a Fourth Amendment violation. *Binay v. Bettendorf,* 601 F.3d 640, 647 -648 (6th Cir. 2010) (*See Grawey v. Drury*, 567 F.3d 302, 311 (6th Cir. 2009); *Dunn v. Matatall*, 549 F.3d 348, 353 (6th Cir. 2008)). To determine whether a constitutional violation based on excessive force has occurred, this Court applies "the objective-reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight." *Id.* (*citing Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007) (*citing Graham v. Connor*, 109 S.Ct. 1865, 1871 (1989)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id.* (*citing Graham*, 109 S. Ct. at 1871-1872). "Relevant considerations include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.' " *Id*. (*citing Fox*, 489 F.3d at 236; *quoting Graham*, 109 S. Ct. 1871-1872).

In *Michigan v. Summers*, 101 S. Ct. 2587, 2595 (1981), the Supreme Court held that "for Fourth Amendment purposes . . . a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted."  The Court described the rationale for this limited authority as follows:

> In assessing the justification for the detention of an occupant of premises being searched for contraband pursuant to a valid warrant, both the law enforcement interest and the nature of the "articulable facts" supporting the detention are relevant. *Id.*  Most obvious is the legitimate law enforcement interest in preventing flight in the event that incriminating evidence is found.  *Id.*  Less obvious, but sometimes of greater importance, is the interest in minimizing the risk of harm to the officers.  *Id.* Although no special danger to the police is suggested by the evidence in this record, the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence.  *Id.* at 647-648.  The risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation.

> *Id.* at 648 (*citing Michigan,* 101 S. Ct. at 2594).

In *Muehler v. Mena*, 125 S. Ct. 1465, 1469 (2005), the Supreme Court clarified that inherent in the authorization to detain an occupant of the place to be searched, is the authority to use reasonable force to effectuate the detention.  *Id.*

### C.   LIABILITY OF THE DEFENDANT SWEAT IN HIS INDIVIDUAL CAPACITY.

Plaintiffs allege facts to show that Defendants City of Toledo and Sweat are jointly and severally liable for the violations, if any, of the Fourth Amendment.  The Magistrate construes this as a claim to determine whether Plaintiffs have alleged sufficient facts that Defendant Sweat was personally involved in the constitutional violations.

Each defendant's liability must be assessed individually based on his own actions.  *Binay, supra*, 601 F. 3d at 650 (*citing Dorsey v. Barber*, 517 F.3d 389, 399 n. 4 (6th Cir. 2008) (*citing Ghandi v. Police Department of the City of Detroit*, 747 F.2d 338, 352 (6th Cir. 1984)).  To hold an

officer liable for the use of excessive force, a plaintiff must prove that the officer "(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force." *Id.* (*citing Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997) (internal citations omitted)).  "As a general rule, mere presence at the scene of a search, without a showing of direct responsibility for the action, will not subject an officer to liability."  *Id.* (*citing Ghandi*, 747 F.2d at 352 (internal citations omitted)).

The uncontroverted evidence in the record shows that Defendant Sweat was told that Plaintiffs refused to follow commands.  Standard operating procedure dictated that everyone in the search warrant is put on the floor with their hands atop their heads.  To the best of Defendant Sweat's knowledge, this procedure was followed (Docket No. 36, Attachment 8, pp. 52-53 of 65).  Upon review of his testimony as well as the entire record, the evidence does not even place Defendant Sweat in the room with Plaintiffs when they were handcuffed.  Plaintiffs neither allege nor present some type of concrete evidentiary material in support of its position that Defendant Sweat used his weapon or threatened to use his weapon to corral Plaintiffs to the floor, that he supervised his fellow officers who allegedly used excessive force, or that he owed Plaintiffs a duty of protection against the use of excessive force.  There is no disputed issue of material fact as to whether Defendant Sweat was personally involved in the purported conduct that violated the Fourth Amendment.

### D.  LIABILITY FOR VIOLATION OF A CLEARLY ESTABLISHED CONSTITUTIONAL RIGHT.

Paying close attention to the facts in the record and the circumstances, including the severity of the alleged crime at issue, whether Plaintiffs posed an immediate threat to the safety of the officers and others and whether Plaintiffs actively resisted arrest or attempted to evade detention,

the Magistrate balances the nature and the qualify of the alleged intrusion on Plaintiffs' Fourth Amendment interests against the government's interest.  By his own admission, Defendant Sweat could only speculate that the fellow officers justified the detention and alleged offensive contact because Plaintiffs were persons suspected of committing serious drug and weapon offenses and the nature and extent of searching for drugs or arresting the offenders may have given rise to sudden violence or efforts to conceal or destroy evidence (Docket No. 36, Attachment 8, p. 28 of 65). Defendant Sweat articulated that it was likely his fellow officers believed that Plaintiffs' constant movement and inability to follow commands from the officers posed a potential threat so standard operating procedure dictated that the officers exercise command of the situation by minimizing and preventing risks of harm (Docket No. 36, Attachment 8, pp. 51, 52, 53 of 65).  However, the facts suggest that Defendant Sweat had little contact with Plaintiffs.  Defendant Sweat testified that he did not observe the alleged use of force since he was not in the room when Plaintiffs were detained. Defendant Sweat claimed that he stayed in the kitchen doing paperwork while his fellow officer searched the premises and detained Plaintiffs (Docket No. 36, Attachment 8, pp. 50, 53 of 65).

When the burden shifts, the Magistrate cannot find that Plaintiffs adequately opposed Defendant Sweat's request for judgment as a matter of law.  In other words, Plaintiffs failed to present some type of concrete evidentiary material in support of their position that Defendant Sweat was present when the force ensued, that he used his gun with more force than necessary and that the force used was unreasonable.  Plaintiffs have not shown that Defendant Sweat deprived them of a right or privilege that has been secured by the United States Constitution, federal law or statute; consequently, Defendant Sweat's entitlement to qualified immunity is not defeated.

**VI. CONCLUSION**

For these reasons, the Magistrate Judge grants Defendants' Motion for Summary Judgment

as to Count Two.

IT IS SO ORDERED.


/s/Vernelis K. Armstrong     8/8/12
United States Magistrate Judge

11